## F. B. WASHBURN & CO. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. July 16, 1915.)

### No. 1111.

1. FOOD ⬡⟶22—FOOD AND DRUGS ACT—VIOLATION.

In a prosecution for violation of the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768 (Comp. St. 1913, §§ 8717–8728), where there was evidence that macaroons are made: (1) Of ground almonds, sugar, and white of eggs; (2) of cocoanut, sugar, and white of eggs; and (3) of cocoanut, sugar, white of eggs, and glucose—and defendant was charged with having adulterated macaroons made by him by the addition of glucose, the question of the normal composition of the article of food known as a "macaroon" was for the jury.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 23; Dec. Dig. ⬡⟶22.

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

2. FOOD ⬡⟶5—FOOD AND DRUGS ACT—ADULTERATION.

In a prosecution for violating the Food and Drugs Act of June 30, 1906, by adulterating macaroons by the addition of glucose, if the only respect in which glucose differed from cane sugar, the ingredient for which it was substituted, was in its degree of sweetness, no standard of sweetness for macaroons being fixed by the law or otherwise, the defendant was not guilty.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. ⬡⟶5.]

3. FOOD ⬡⟶5—FOOD AND DRUGS ACT—"ADULTERATION."

In a prosecution of a macaroon manufacturer under the Food and Drugs Act of June 30, 1906, where the evidence showed that a macaroon is a

mixed food composed of various ingredients, that its name is distinctive, and that the glucose which the defendant added, producing the charged adulteration, was not poisonous or deleterious to health, the defendant was not guilty of "adulteration" under section 8 (section 8724) of the act, providing that a mixture known by a distinctive name shall not be regarded as adulterated if it does not contain any added poisonous or deleterious ingredient.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. ☞5.
For other definitions, see Words and Phrases, First and Second Series, Adulterate.]

4. FOOD ☞22—FOOD AND DRUGS ACT—MISBRANDING.
In a prosecution under the Food and Drugs Act of June 30, 1906,. for misbranding macaroons, where there was evidence that a macaroon, as commonly understood, was made of ground almonds, sugar, and white of eggs, and that the defendant's product was made of cocoanut, sugar, white of eggs, and glucose, the question of misbranding was for the jury.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 23; Dec. Dig. ☞22.]

5. FOOD ☞15—FOOD AND DRUGS ACT—"MISBRANDED."
In a prosecution for misbranding macaroons, brought under the Food and Drugs Act of June 30, 1906, section 8 (section 8724) providing that an article of food is misbranded if it be an imitation of or offered for sale under the distinctive name of another article, or if the package containing it, or its label, shall bear any statement regarding the ingredients or substances contained therein, which statement shall be false or misleading in any particular, if a macaroon consists of cocoanut, sugar, and white of eggs, articles shipped by defendant containing glucose in addition, and branded "Macaroons," were "misbranded" within the act.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ☞15.
For other definitions, see Words and Phrases, Second Series, Misbrand.]

In Error to the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

F. B. Washburn & Co. was convicted of violating the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768 (Comp. St. 1913, §§ 8717–8728), and it brings error. Decree affirmed in part and reversed in part, verdict set aside, and case remanded for further proceedings not inconsistent with the opinion.

Frederick W. Fosdick, of Boston, Mass., for plaintiff in error.

James S. Allen, Jr., Asst. U. S. Atty., of Boston, Mass. (George W. Anderson, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This is an information brought by the United States under sections 2, 7, and 8 of the Food and Drugs Act of June 30, 1906 (34 Stat. at Large, p. 768, c. 3915). It contains two counts. In the first count the government charges that, on August 1, 1910, the respondent, at Brockton, in the district of Massachusetts, unlawfully and knowingly shipped and delivered to a carrier for shipment and carriage from said Brockton to Greensburg, in the state of Pennsylvania, certain food called "macaroons," which food was adulterated within the meaning of the act of Congress, approved June 30, 1906, "in that a substance, to wit, glucose, had been mixed and

packed with said food so as to reduce and lower and injuriously affect its quality or strength." In the second count it was charged that the food shipped as aforesaid was misbranded within the meaning of the act—

"in that the label on said food and its containers, and the package containing the same, did bear a certain statement regarding said food which was false and misleading in certain particulars; that is to say, the statement, in substance and effect, following: 'Marcaroons'—whereas in truth and in fact said food was not macaroons."

There was a trial by jury, and a verdict of guilty was rendered on each count. The case is now here on the respondent's bill of exceptions, and the errors assigned are to the refusal of the court to direct verdicts for the respondent at the close of all the evidence, to its refusal to give certain requested instructions and to the admission of certain evidence.

The provisions of the statute relied upon to sustain the first count read as follows:

"Sec. 7. That for the purpose of the act an article shall be deemed to be adulterated: * * *

"In the case of food:—

"First, if any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength."

It was stipulated between the parties, and the stipulation was put in evidence, that the food in question was shipped by the respondent in interstate commerce, as set forth in the information, that it contained 29.44 per cent of commercial glucose, and that the package containing the food was labeled as the information alleged. There was also evidence that the food contained 42.76 per cent of cane sugar.

[1] At the trial, the principal question in dispute was as to what the article of food known as a "macaroon" consisted. There was evidence tending to show that it consisted: (1) Of ground almonds, sugar, and the white of eggs; (2) of cocoanut, sugar, and the white of eggs; and (3) of cocoanut, sugar, the white of eggs, and glucose. On the count for adulteration, one of the government's positions was that a macaroon was an almond cake, but, whether it was a cake of almond or cocoanut, it was adulterated if glucose was added. The respondent's position was that a macaroon was a cake made of cocoanut, sugar, the white of eggs and glucose, and it requested the court to charge the jury, in substance, that if they found a cake so made was a macaroon, they should acquit the defendant of the charge of adulteration. The court refused to give this instruction, and charged the jury that the question for them to consider on this count was whether the cakes which the respondent admitted having shipped in interstate commerce were adulterated, in that glucose had been mixed and packed with them so as to reduce or lower or injuriously affect their quality or strength, and that, in considering that question, they need not determine whether the cakes shipped by the defendant were properly called "macaroons" or not, but should consider that they were macaroons notwithstanding they had cocoanut in them. It thus appears that the court, in its charge, did not permit the jury to deter-

mine, on the first count of what the article of food known as a macaroon consisted, but charged them, as a matter of law, that it consisted of cocoanut, sugar, and the white of eggs, and that they might find the product adulterated if the glucose, which the respondent admitted it put into its cakes, reduced or lowered or injuriously affected their quality or strength. The respondent, in view of the evidence, was entitled to have the jury, before reaching a conclusion upon the question of adulteration, determine what a macaroon was. Indeed, it was essential, in view of the theory on which this branch of the case was tried, for them to do so in order to reach a correct result. If the jury found that it consisted of ground almonds, sugar, and the white of eggs, the respondent was entitled to be discharged, for there was no evidence that it shipped in interstate commerce macaroons made of almonds to which glucose was added. Then, again, if the jury found that a macaroon consisted of cocoanut, sugar, the white of eggs and glucose, the respondent was entitled to be discharged, for the evidence disclosed that the article which it shipped in interstate commerce was so composed. There was only one contingency presented by the evidence and the allegations of this count on which the respondent could be found guilty, and that was in case the jury found that a macaroon consisted of cocoanut, sugar, and the white of eggs, and that the respondent, by adding glucose, thereby reduced or lowered or injuriously affected its quality or strength. This requested instruction should have been given, and the refusal to do so was error.

[2] As to whether the food product of the respondent was adulterated by the addition of glucose—it being assumed that the article known as a "macaroon" was made of ground cocoanut, etc., without glucose—the evidence tended to show that commercial glucose or corn syrup was a corn product chemically produced; that it was a white, sweet syrup and in no way injurious to health; was about three-fifths as sweet as cane sugar, and contained greater food properties than cane sugar; that it was a viscid or sticky substance, and gave to the macaroon and caused it to retain a chewy quality; that a macaroon containing glucose was less pleasing to the taste, but whether this was due to a difference in the degree of sweetness between it and cane sugar, or because of the character of the taste, the evidence did not disclose. The only evidence on this point was that some of the witnesses said that they did not like a macaroon made with glucose as well as they did one made with cane sugar.

The respondent requested the court to charge the jury that the law fixed no standard for sweetness in a macaroon, and also that they were not to consider, in determining the innocence or guilt of the respondent on the question of adulteration, the sweetness of corn syrup as compared with the sweetness of cane sugar. It is true that the law fixes no standard for sweetness of a macaroon; it is also true that the evidence disclosed that the degree of sweetness in a macaroon, whether made of cocoanut or almond, varies with different makers; that they use a greater or less amount of sweetening as their fancy dictates. The court declined to charge the jury, as requested, in these respects, and simply told them that there was no dispute as

to glucose not being as sweet as sugar—that it was only three-fifths as sweet as sugar—and that, while the defendant's evidence was that this loss in sweetness was compensated for by other advantages in the use of glucose, so that, on the whole, the cakes were not reduced or lowered or injuriously affected in quality or strength by its addition, that was for the jury to determine. From this it appears that the court told the jury they might find that a macaroon made of cocoanut in which glucose was used was adulterated, because glucose was less sweet than cane sugar, unless they found that other advantages derived from the use of glucose so made up for the loss of sweetness as, on the whole, not to reduce or lower or injuriously affect its quality or strength. As the law fixed no standard of sweetness for macaroons, the respondent was entitled to have the jury so instructed, and, as the evidence was such as not to warrant the jury in finding that there was, in fact, any standard of sweetness for a macaroon, they could not consider the question of the degree of sweetness in arriving at a verdict on the question of adulteration; and, if the evidence would warrant no other conclusion than that of a difference in the degree of sweetness, then a verdict should have been directed for the respondent on this count. If, however, in view of the fact that the jury were permitted, in the course of the trial, to eat macaroons made according to the formula of the respondent, and macaroons made with sugar without glucose, it can be said that they had evidence before them as to the character of the taste of macaroons produced with sugar as compared with those made of sugar and glucose, and that, because of this difference, macaroons made with sugar and glucose were less palatable than those made with cane sugar alone, then there may have been some evidence on which to submit the question to the jury. But this view of the evidence was not presented to the jury by the charge, and the verdict was based apparently upon the evidence showing a difference in the degree of sweetness. For these reasons we are of the opinion that the verdict on this count must be set aside.

[3] Furthermore, it seems to us that the trial on the first count proceeded upon a wrong theory, and that the allegations and proofs offered would not warrant a conviction for adulteration within the meaning of the act. The evidence discloses that a macaroon is a mixed food composed of certain ingredients; that the name by which it is known is distinctive; and that the added ingredient, glucose, which the respondent used in its cakes was not poisonous or deleterious to health. It is provided in section 8, subd. 4 (1), that a mixture known by a distinctive name shall not be regarded as adulterated if it does not contain any added poisonous or deleterious ingredient. The added ingredient here in question was neither poisonous nor deleterious, and, as the mixture or compound was known by a distinctive name, it was not adulterated within the meaning of the act. United States v. Forty Barrels of Coco-Cola, 215 Fed. 535, 132 C. C. A. 47; Id. (D. C.) 191 Fed. 432.

[4] Upon the second count the contention of the government was: (1) That a macaroon, as commonly understood, was made of ground

almonds, sugar, and the white of eggs, and if an article made of ground cocoanut was labeled and shipped as a "macaroon," it was misbranded; and (2) that whether, on the evidence, a macaroon should be found to consist of ground almonds or cocoanut, sugar, and the white of eggs, as those branded and shipped by the respondent also contained glucose, they were not macaroons, and were misbranded.

As there was evidence on this count from which the jury could have found that a macaroon, as commonly understood was made of ground almonds, sugar, and the white of eggs, and that those shipped by the respondent contained cocoanut, but were branded "Macaroons," the government was entitled to go to the jury on this count as to this matter.

[5] There was also evidence on this count, from which the jury could have found that a macaroon, as commonly understood, was made of ground cocoanut, sugar, and the white of eggs, and that those shipped by the respondent in interstate commerce were thus made up, except that glucose was added; and the question is suggested whether the jury would be warranted in finding that, by the addition of glucose, the articles ceased to be macaroons, so that the respondent misbranded them by labeling them "Macaroons." In the first count, the court charged the jury that a cake made of cocoanut, sugar, and the white of eggs was a macaroon for the purpose of adulteration, and that, if they found those shipped by the respondent in interstate commerce contained glucose, they might find that they were adulterated, if their quality or strength was thereby lowered. The respondent urges that this produces this dilemma: That a cake made of cocoanut, sugar, and the white of eggs is a macaroon which may be adulterated by the addition of glucose, and also that it may be found not to be a macaroon, for the purpose of misbranding, if glucose is added. But, in view of the conclusions reached with reference to the first count, we find it unnecessary to consider this contention. If the jury found that a macaroon consisted of cocoanut, sugar, and the white of eggs, then, inasmuch as those shipped by the respondent contained glucose and were branded "Macaroons," they were misbranded within the meaning of section 8, subdivisions 1 and 4 (1), for they were "an imitation of or offered for sale under the distinctive name of another article," and were labeled so as to deceive and mislead the purchaser. United States v. Forty Barrels of Coco-Cola, supra.

We do not find it necessary to consider the question of evidence to which exception was taken, as it relates solely to the first count.

The decree, so far as it relates to the count for misbranding, is affirmed; but, so far as it concerns the count for adulteration, it is reversed, the verdict is set aside, and the case is remanded to the District Court, for further proceedings not inconsistent with this opinion.